My name is Craig Castle. I represent the appellant, Sandra Espinoza, in this particular case. As the court recalled, this is a case where my client was a passenger on an Alaska Airlines flight headed for Loretta, Mexico. As the plane was taking off and boarding, a large bag fell on her head and injured her. She sustained injuries from that. The case was originally filed in the Los Angeles Superior Court. It was removed under diversity of citizenship. And this issue before the court today relates to a Federal Rule of Civil Procedure 60B1 motion. The plaintiff made a motion to set aside an order of dismissal, which followed upon plaintiff's counsel failing to attend a scheduling conference and then failing to respond to an OSC. I'm the counsel that created those omissions. Mrs. Espinoza is blameless for all of this. But our main contentions are the standard review for the case is abuse of discretion. May I ask a preliminary question? I hate to interrupt. Something that sort of mystified me. Why isn't this case barred by the statute of limitations? Your Honor, I can respond to that. That's interesting. Because the two-year statute fell on, I believe it was the weekend, the statute is extended out a couple of days until the next business day under the Code of Civil Procedure. So that's why the claim was not originally barred. So in any event, but in this case then, after the case was dismissed, Mrs. Espinoza filed the Federal Rule of Civil Procedure 60B motion. The lower court denied the motion. This case utilizes the pioneer case, which is an equitable balancing. And by the way, just as a footnote to that, in California we have a statute called CCP 473, which allows judges to be set aside in orders under excusable neglect. In the state statute under which Federal Rule of Civil Procedure 60 was modeled, if the motion is made within six months, it's an automatic set aside. Essentially, if the attorney falls on his sword or her sword, the motion is set aside. Now, the Federal Rules, of course, don't follow that path. However, in this case, the Balancing Act takes into account it is an elastic test, which utilizes taking into consideration the amount of prejudice to the opposing party by setting aside the judgment, whether the delay was reasonable. Also, in this case, it's broadened so that the court also looks to whether there's prejudice to the plaintiff, which is an important factor. I'm curious about something. For me, you argued to the district court that you failed to receive the minute order, and that's the reason you didn't appear. But to me, that's a red herring. It seems more likely that your failure to appear was just a mistake. And the courts have been pretty forgiving of mistakes where they find no prejudice to the plaintiff, but I think this court was kind of bothered by the fact that you asserted that you failed to receive the minute order and weren't aware of the date. I mean, I don't understand why you even argued that. I mean, the real reason is apparently you just didn't calendar. Well, correct, Your Honor. I think that's our position, that the court's finding that there was bad faith on the part of the plaintiff's attorney in the disingenuous way that he argued missing the hearing. We take issue with that. In fact, I have the exact page. Judge Morrow had felt that we had said in the declaration that we didn't know that a scheduling conference had been set. But in fact, what I say is that the reason for my failure to attend the setting of scheduling was due to inadvertent failure to schedule that date in the office calendar, due to failure in the first instance to receive and review the court's minute order. But that's because you blame it on the minute order. Well, no, no. What's problematic about that is the reason I said receive and review the minute order is because we also have in evidence in the excerpts of record that there were problems with my e-mail system. Towards the end of the year, all of the e-mails were not ported to the new carrier. So I didn't have the advantage of being able to review all of the e-mails and determine for sure if I had received them. However, my pattern in practice, and this is demonstrated in the record, would be to calendar a date if I reviewed it and then attend the hearing. But you had participated in compiling the pretrial status report for April 26th, which contained the April 18th date. Well, that's true. But, Your Honor, again, it comes down to a matter of retaining in your memory that the hearing is upcoming, calendaring it, and then attending the hearing. In this case, what we say in the underlying record is that I didn't calendar it and then essentially forgot the hearing on the 14th, whenever the date was, even though it was not that far off in the distance from when the joint report was filed. That's a different story than just flat-out denying we didn't receive the minute order and just blew it off. That's not what we're saying in this case. So I think, if anything, our position is that this just shows negligence on the part of the attorney. And I understand there are instances of negligence, but I don't think that that's tantamount to bad faith. The cases make it pretty clear that, to show bad faith, you need to have some sort of fencing or deviousness, willfulness. In this case, it's just simply to gain an advantage. Gain an advantage, correct. In this case, it's really just a matter of not calendaring the date, not being able to confirm that we received the date. If my position had been that they didn't send notice, then I simply would have said that they didn't send notice. I have to have purposely to say that did not receive in review because I didn't review it, because I didn't. I obviously missed the hearing, so that's what's put in the record on that point. So why did you miss the hearing? Well, the hearing, as indicated in the record, was missed because I forgot about the hearing on that particular date and then had a conversation with the clerk wanting to know where I was. That day, right? I forgot the hearing that day. You called that day. They called me, wanting to know why. Where were you? I think I was in my office that day. No, no, I mean they called you to find out we're having this hearing. Yes, correct. Where are you? Correct. And I said I had forgot about the hearing, even though I had participated in the joint report. And so that in turn then generated an order to show cause, which also in the record I've indicated I was unaware of. I did not see it until it was too late. The court dismissed the case. How did you not see the order to show cause? Well, my practice, and this is in the record, is based on 25 years of almost entirely state court practice, only one or two federal court cases, almost entirely a paper practice, with the expectation of receiving written notification of events, including notices. I had one case before the same judge in federal court where I was a sponsoring attorney. That was a criminal matter, and this is in the record. In that case, we did receive written notifications as well. So granted, it was a negligence not to be able to find the email. The other point that's raised, however, is that because I had this other case with Judge Morrow, there were some notifications in that case which I wasn't paying attention to because I wasn't the primary attorney on the case. So you're a paper person in the electronic world. Paper person in the electronic world. Now, that's changed in the last year or so, I have to confess. I have an Android phone and so forth. But at the time of this incident, which at the time of this incident, unfortunately I wasn't as diligent as I should have been. However, that's not to say that the acts were in bad faith. And under the Balancing Act, Judge Morrow indicated that these events surrounding the hearing, the scheduling hearing, she indicated that kind of tipped the balance into making the determination that the attorney, Mr. Castle, acted in bad faith. So I don't believe there is any evidence of willfulness, deviousness, fencing related to this. It's a matter of negligence. Now, obviously some of the cases if the negligence is extreme enough or gross enough, the court will dismiss the case. But excusable neglect has a broader meaning in this case because you have to take into account the prejudice to the parties and the delay and so forth and the court's dock as well. And I'd like to address the prejudice issue because in this case that's a very important issue where I feel the lower court did not, in other words, they made a clearly erroneous finding material fact. There's absolutely no evidence in the record that defendant Alaska Airlines suffered prejudice as a result of the delay in this case. Now, granted, there was a time that went by and there's a presumption perhaps that prejudice could result from that. However, we pointed out in the record below, they did not cite any instances of witnesses that were lost. They said that witnesses' memories would tend to fade over the passage of time. But the cases are clear that there has to be some palpable showing of prejudice. Now, the important thing to notice in this case is that Alaska Airlines had control of the instrumentality of the flight. They had their employees that were steward service people, passengers. They had a manifest. And this is three years later when the case finally gets dismissed. So for them to argue that they were prejudiced, they were no more prejudiced after the dismissal of the case than they were before the dismissal of the case. So I think clearly on the record that Judge, the lower court was wrong on that particular prong of the Pioneer Balancing Act. So our main contingents are that there's no showing of bad faith on the part of counsel, just acts of negligence, and there's no prejudice to the defendant. Also, another point under the standard of review is that if the court does not apply the correct law, it can be considered an abuse of discretion. And keep in mind that a glaring abuse of discretion is not needed in cases where matter is dismissed because of the obvious interest to the plaintiff in their case. How do you respond to the court's finding of unreasonable delay in filing your Rule 60B motion? Well, Your Honor, I think that that aspect, that prong of Pioneer, has to be construed with the other prongs. Now, so in other words, if there's no prejudice, the six-month delay should not tip the balance necessarily into dismissing the case. However, we cited cases. There's the case of, I believe it's Filbrook that we cited, that there was, in that case, there was a six-month delay. The court did not find that that was an unlengthy delay. So it's all relative. This is why I mentioned also that Section 473 of the CCP has that six-month kind of cutoff. So it depends on all of the facts. Mainly in this case, if the prongs of prejudice are not there to defend it and if plaintiff's attorney's acts were not in bad faith, and also given the high amount of prejudice to plaintiff, because the court did not, by the way, consider less drastic alternatives to dismissal, the cases such as the Furtick case say that they should make that analysis. Now, granted, normally that happens on the appeal of the case. But in this case, because the court had an opportunity to review what it had done, it could have taken into account alternative sanctions to the harsh sanction of dismissal, such as sanctions against the attorney, suspending the attorney from practice, having that the plaintiff gets a new attorney. There are a number of avenues. Evidentiary sanctions can be imposed. The judge did not even articulate in this case that any of those had been considered. And I believe I'll reserve my time unless there are any other questions at this point. Thank you, Counsel. Good morning, Your Honors. My name is Arthur Wilner, and I represent the Apalis Alaska Airlines and Alaska Air Group in this case. This court has had occasion in the past 20 years, on many occasions, to address the excusable neglect standard of Rule 60b-1. The case books are filled with examples in which this court has gone in various directions on the issue. What I think needs to be pointed out at the outset, though, is that our district judge in this case did precisely what this court has commanded over the past 20 years that the district courts do, which is evaluate each of the pioneer criteria and weigh each of them in connection with what would ultimately be an equitable decision. The court did not engage in a per se exercise, did not find one particular factor to be determinative, but rather addressed all four of the pioneer factors and also considered the prejudice to the plaintiff. On that point, what evidence is in the record of tangible prejudice to Alaskan Airlines? Alaska Airlines can't point to a particular witness who passed away or who moved away. Wait, you did not answer my question. What evidence in the record, what tangible evidence in the record, demonstrates that Alaska Airlines is prejudiced? The evidence is the evidence of the delay. But is that enough delay in and of itself? Because if delay in and of itself was enough, then you wouldn't have to balance any factors. When we have a two-year statute of limitations and the lawsuit is filed on essentially the very last day of the statute. That isn't relevant in the pioneer bryonis factors. Well, it's not relevant in and of itself, but what I'm saying is when we have a situation where the delay due to the plaintiff's counsel's acts then took the matter that much further, the delay becomes a problem. What we're dealing with here. But what case says an ordinant delay in and of itself is sufficient to warrant dismissal or to establish prejudice? What case says that? There's no case that says simply a matter of delay is enough to warrant dismissal. But what the cases do say is that you have to look at the totality of the circumstances. And what we're dealing with here is a situation where discovery began in the case. The only depositions that were taken in the case were the depositions of the plaintiff, her husband, and her daughter-in-law. Once the case was dismissed, no further discovery could take place. Alaska Airlines couldn't subpoena any passengers. But you could interview passengers. You don't have to subpoena people to gather information. And there's nothing in the record saying that there was any difficulty along that line of garnering information. And in addition to that, there's also the fact that several of the witnesses would have been in Alaska Airlines' employ, and they could easily and probably, if I were in your place, probably already interviewed about the whole case. There's probably interviews on record. Certainly, to the extent that any employees were aware of this incident, they had been interviewed. Yeah, and that's their job, I mean, to be aware of incidents. You know, they're not waitresses anymore, right? They're stewards. That's their job. That's correct, Your Honor. Did Judge Morrow make an express finding of bad faith? I don't think Judge Morrow made an express finding of bad faith. I think what Judge Morrow did, and I don't have her language in front of me, I think Judge Morrow felt that there was insufficient evidence of good faith. I think what Judge Morrow found was that plaintiff's counsel's lapses were, number one, were inexplicable. Number two, I think she was troubled by the declaration that was filed by plaintiff's counsel that strongly suggested that he never received the order setting the scheduling conference and was blaming that as at least being part of the reason why he missed the conference. Let me just say this. It was clear that she was very upset with counsel, but the sanctions imposed really were the best sanctions in terms that his client was completely deprived of any hearing. And were there any alternative sanctions that she mentioned at all, such as fining the lawyer or imposing even more drastic sanctions on the lawyer as opposed to affecting the client? Your Honor, I believe that Judge Morrow did resort to a less restrictive sanction initially, which was issuing the order to show cause. If this were a case where Judge Morrow simply dismissed the action because Mr. Castle failed to appear at the scheduling conference, I don't think there would be any question that that would have been an abuse of discretion. I'm not sure that we would have even opposed the motion to set aside the dismissal under those circumstances. Counsel, doesn't our case law say that the district court has to explain what alternative sanctions were considered and why those sanctions were not effective enough to warrant keeping the case in the system? Your Honor, I'm not sure whether the case law says that the district judge has to set that forth. I think what Judge Morrow said, and if she didn't say it, I'll say it here on her behalf, is that, number one, the less drastic sanction was the order to show cause, which gave Mr. Castle seven days in which to just file something explaining what happened. But Judge Morrow went beyond that. Judge Morrow didn't dismiss the case on April 25th, seven days after the scheduling conference. She waited approximately three months. Well, are you familiar with our case, Leon v. Sideak system? It's a 2006 case. It seems to say that whether the district court properly considered lesser sanctions prior to dismissal turns on whether the district court explicitly discussed the feasibility of the alternative sanctions and implemented those sanctions before ordering dismissal and warned the party at risk that dismissal was an option. Your Honor, clearly Judge Morrow didn't do that. But I think what Judge Morrow did in her order to show cause was effectively that. The court served an order following the scheduling conference that clearly, in the first paragraph of the order, it's page 129 of the record, starts out saying plaintiff's counsel was not present, the court issues an order to show cause why this case should not be dismissed for failure to appear. But is that a consideration of alternative sanctions if you're saying this is an order to show cause why the case shouldn't be dismissed? What alternative sanction is in there? Well, there's no alternative sanction in the order other than the order itself, which is your case is going to be dismissed if you don't offer some explanation as to where you were. And you've got a week to do it. And the fact is the judge gave Mr. Castle three months in which to do it. And I think what we might be glossing over here is that, you know, we seem to be focusing on the misscheduling conference and isolating that from the totality of the circumstances. And what we also need to look at is that following the OSC order, plaintiff's counsel still did nothing. So what advantage do you think plaintiff's counsel could possibly reap by failing to appear or failing to respond to the OSC? I don't think that plaintiff's counsel intended to reap any advantage from this. I'm not a mind reader. It baffles me. What advantage could he reap from doing those things? There is no advantage. I mean, there's no advantage. It's only disadvantage. He risks his case being dismissed. Well, isn't that a little bit inconsistent with our preferred approach that cases should be resolved on the merits? Well, that's true, which is why I said earlier that if the case had been dismissed by Judge Morrow right after the scheduling conference, I think the decision would be an easy one. But that isn't what happened. The case was dismissed three months after the order to show cause issued. And, frankly, had Mr. Castle filed his Rule 60b-1 motion, you know, it's not quite possible that Judge Morrow would have come out differently on the case. But he didn't do that either. He waited seven months until January of 2012 in which to file it. Do we have any case law that says that resort to malpractice action mitigates any prejudice to the plaintiff? I believe so, Your Honor. I think that was mentioned by the Supreme Court in Pioneer, and I also believe that this Court has indicated as well that a client essentially can't avoid the consequences of his or her attorney's negligence or bad act. You know, it just seems to me we've excused so much worse behavior, for example, in Pinkay, where a very highly regarded law firm wasn't familiar with the time deadlines for filing a notice of appeal. Your Honor, I would – I think Pinkay – I don't think Pinkay is as egregious as this case, quite frankly. You know, Pinkay involved really negligence by a paralegal. Well, and total reliance by the lawyers upon a paralegal to know the law, which they're charged with knowing. Well, I think the issue in Pinkay, and what troubled the Ninth Circuit in Pinkay, was that the district court had essentially used a per se rule in dismissing the action, that simply by virtue of the fact that – No, in Pinkay, the district court found excusable neglect. Then it came to our panel, and we said it wasn't excusable neglect. And then it went to an involuntary hearing, and Chief Judge Kaczynski wrote a scathing dissent in that case, saying how egregious that conduct was. And I agree with him that it was egregious, yet most of our court – Including me. Said it was all right. And it seems far more egregious to me than this, especially given the fact that the case was filed in state court. It was moved by you to federal court. This lawyer needs to get with it in federal court and the electronic filing system, but is that a reason to dismiss the case with prejudice? Your Honor, the hearing that plaintiff's counsel missed was a scheduling conference. It wasn't a garden variety status conference. That's the other point. I don't think that goes in your favor, because when you have a scheduling conference, you submit that Rule 26 report, and he met with you and worked it out, and you submitted the report. So it was basically done, and judges had to approve it. The point that I was leading up to, though, Your Honor, was that it was a scheduling conference. One would expect an attorney following a scheduling conference to take note of what the schedule is. I mean, what's more important? And it's negligent not to do so, but does that deserve the death penalty? Well, I think it's egregiously negligent to ignore the schedule that's been issued by the court following a scheduling conference that you've missed, and then when you further ignore the order to show cause that says, hey, you've missed the scheduling conference, if you don't respond in seven days, we are going to dismiss the case, and then you do nothing, and the court grants you essentially three months in which to do something, and you still do nothing. But if you're not on the electronic, you know, if you're not with the electronic filing system, and you don't get the OSC, then you're not going to do anything, because the same negligence that caused you to miss causes you to not have notice of the OSC. Well, I think Your Honor is correct. But at some point, the failures become compounded and egregious, and it certainly doesn't explain why for seven months, why it took seven months before plaintiff's counsel then filed the Rule 60 motion, and in the meantime, discovery obviously isn't taking place, because there's no case in which for it to take place. And here we are today, it's, you know, the end of 2013. We have an incident that occurred coming on six years. At this point, if the case is reopened, Alaska Airlines will, while it's certainly possible that its employees may remember what happened back, you know, six years ago on that airplane. Couldn't you tell me that you had already interviewed them? We interviewed them, you know, four years ago. Okay, so you have interview notes, right? Well, we have interview notes. Yes, we do. Well, we don't have deposition testimony. So interview notes can refresh recollection. But we're never going to be able to find passengers who are going to remember this. I mean, that ship has long sailed. You know, the fact of the matter is it's difficult enough to find, you know, run-of-the-mill passengers who remember what they saw on an airplane. Well, you'll both be in the same position. Both parties will be in the same position. So neither will be prejudiced. Not really, because plaintiff will testify on her own behalf. But she took her deposition.  So she will testify. She'll have two witnesses with whom she was traveling who will testify. And plaintiff's counsel will have every reason to stand up in front of the jury and say to the jury, you know, look at Alaska Airlines. You know, they're in, as Mr. Castle said, you know, moments ago. They know who the passengers were. They were in control of the passengers. Why hasn't Alaska Airlines called any passengers to testify? Well, that's speculation at this point, and there was nothing presented to the district court regarding any prejudice in that regard, anything specific. Well, there was nothing specific. It's impossible for me to tell the district court that, you know, John Doe, who was seated in seat 15A, his memory is going to fail or he's not going to be. Doesn't Alaska Airlines keep its roster or what are they called? Manifests. Manifests. Don't they maintain those manifests in a database? Yes. There's what's called a passenger name record, and we can probably still identify the passengers who were on the flight. That's not the issue. The issue is if we find that, you know, John Doe or Jane Doe, you know, reside in Southern California, they were on the flight, from a practical standpoint, subpoenaing them for deposition or even calling them at this point and saying, gee, do you remember when you were on this flight to Mexico six years ago? You know, do you recall a bag falling out of an overhead bin? Their reaction is going to be, you've got to be kidding. You might be surprised. Well, if the bag fell on their head, I think at least I'd have a shot. Or if they were the ones who dropped the bag, I think I'd have a shot. Or if it was their bag. Well, if it was their bag. But we've never been able to identify the passenger who actually dropped the bag or who owned the bag. And so essentially we're... Well, if you weren't able to identify it then, how are you prejudiced? If you've never been able to identify the passenger who dropped the bag, then how have you suffered prejudice? Because we will probably be unable at this point to identify any passengers who were seated anywhere near the plaintiff who will be able to testify about this. Essentially what will happen, if this case is reopened, plaintiff will be in a stronger position from an evidentiary standpoint to present her case by virtue of Mr. Castle's lapses than she would have in the first place. How much money is at stake in this case? Excuse me, Your Honor? How much money is at stake in this case? I couldn't even tell you. My recollection is that plaintiff's counsel served a statement of damages back in state court for a fairly large figure. We hadn't gotten to the point in the case where we had done any real damage discovery other than taking the plaintiff's deposition. So none of her physicians were deposed, none of her experts were identified, much less deposed. So at this point, three years later, two and a half years since the case was dismissed, I have no idea what condition Ms. Espinoza is in. All right. Thank you, counsel. Thank you very much, Your Honor. Thank you for your time. Counsel, what's your response to opposing counsel's observation regarding the inability to get information from passengers at this point and that giving you an advantage? Well, I think it's very disingenuous, Your Honor. I mean, as we indicated, the accident or when the case was dismissed was almost three years after the incident. They had controlled the instrumentality. They had to manifest. They were in a much better position than the plaintiff to identify the witnesses. Also, there was an independent witness that my client identified in discovery named Roberto Juarez, who's a chiropractor, I think, in Los Angeles. And at one point before the case was dismissed, the defense had subpoenaed Dr. Juarez. So there's at least one witness out there. So that's my response. I think on the prejudice issue, it's clear no prejudice was shown on this. I also wanted to point out that Mr. Willner has indicated a seven-month delay. Technically, it's true it's a seven-month delay, and I know it's quibbling a bit, but the plaintiff did attempt to file the motion on January 13th, which would have been six months, because of a technicality, because the date of the motion that was filed for me by an independent service had been booked up. Instead of just changing the date for the hearing, the department kicked it back, and we had to refile it two weeks later. So in our view, it's really six months, the motion that was made. How do you explain the six months? Well, I was going to address that as well, because in addition to everything else that happened, in the record, we do indicate there are a lot of problems that my family was going through. My stepson had been robbed and beaten in Canada. We drove up to Canada. That took about a month, brought him back down, took care of him over the ensuing months. We had financial difficulties. My practice had difficulties. It's just kind of a combination of these difficulties. If I had it to go over again, like Mr. Willner said, it probably, you know, if we knew about it sooner and could have filed the motion sooner, we would have done so, because it gives the appearance of disrespect to the court, but that was not the intention. But the reality is that they weren't prejudiced by it. And the court's docket, once the case was dismissed, would have been, had to be reset anyway. So the idea that the plaintiff sort of torpedoed the whole court schedule, I think it would have had to be reset anyway. So I don't think that the court was really prejudiced. The other point is that, curiously enough, the lower court dismissed the case, although they gave the plaintiff a lot of latitude in responding to the OSC. They actually dismissed the case a few days before a follow-up hearing, some type of telephonic status conference was scheduled, which I found was curious. It seems like it could be. Did you have that on your calendar? Well, I can't say. That's true. That may have provided a last nail in the coffin. But nevertheless, they did seem to prematurely dismiss that at that point. And if we didn't know about it, we couldn't address the OSC. The other point is that the joint report, all the dates and everything were laid out in the joint report. So essentially the court took care of business that it needed to on the scheduling date. So what was the amount of damages you filed for in state court? Well, of course, in state court we file according to proof. But in discovery, the evidence indicated there were about $10,000 in medical bills. The plaintiff claims a substantial loss of income from her real estate business. That's in the record. So theoretically it's a six-figure claim. I think for the case to be in federal court in this posture, it would have to be $75,000-plus. But it's possible the case was scheduled for mediation prior to the dismissal. And I thought that there might have been an excellent opportunity to settle the case of mediation, but that never took place. And the other point is that the plaintiff was still treating at the time of the dismissal, really wasn't in a permanent and stationary position to be able to have the defense be able to depose all of her doctors, and the experts had not yet been designated. So the actual passage of time in that respect probably has put the plaintiff closer to a permanent and stationary position from what I understand it now. So that if the case were reinstated, basically the parties could hit the ground running. In the joint report and also in the ADR statement, the defendants indicated their intention to take the depositions of plaintiff, her traveling companions, which they've done, and also the independent witness whose name was disclosed to them. And both sides indicated they'd like to take the deposition of other passengers, but that was not done. Also, one other point is that the defendants never, by not, despite the request of this attorney, that they divulge the name of the party who dropped the bag on the plaintiff, who's the real culpable party in this, they never disclosed the name of this person that actually dropped the bag. And I would have to think with the manifest information, also in this era of national security, I'd be very surprised that Alaska Airlines would not have information about the passengers. So that's just a sideline point. All right. Well, thank you, counsel. Thank you. We're well over your time, and the case of Espinoza v. Alaska Air Group will be submitted. Thanks, folks, both counsel. All right. Urban v. Toyota Motor Sales has been submitted.
judges: Nelson, Wardlaw, Rawlinson